# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

LISA BERGMAN,

        Petitioner,

                                   Case No. 17-cv-13506

    v.                              Hon. Matthew F. Leitman

SHAWN BREWER, WARDEN,

        Respondent.

_____/

## OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS (ECF NO. 1), (2) GRANTING A LIMITED CERTIFICATE OF APPEALABILITY, AND (3) GRANTING PERMISSION TO APPEAL *IN FORMA PAUPERIS*

Habeas petitioner Lisa Bergman was convicted of second-degree murder, operating a motor vehicle under the influence of intoxicating liquor or a controlled substance causing death, and other charges following a jury trial that, in this Court's opinion, was fundamentally unfair. The charges against Bergman arose of out a car accident in which a vehicle driven by Bergman collided with another vehicle, killing the passengers in the other vehicle. One of the prosecution's star witnesses was a toxicology expert who testified, among other things, that controlled substances in Bergman's system at the time of the accident could cause serious impairing side effects and prevented her from safely operating her motor vehicle.

1

Prior to trial, Bergman's attorney anticipated that the prosecution's toxicology evidence and expert testimony would play a key role in the case against Bergman. So he moved the trial court to appoint a toxicology expert for Bergman, who was indigent, at public expense. Her counsel explained to the trial court that he needed such an expert in order to help him understand and evaluate the prosecution's toxicology evidence and to formulate ways to attack that evidence. Bergman also had an obvious need to present her own toxicology expert witness, if possible. But the trial court refused to appoint a toxicology expert for Bergman. That ruling unfairly insulated the prosecution's toxicology opinion evidence – a core of the prosecution's case – from the most effective cross examination, and it also deprived Bergman of the opportunity to attempt to locate and present her own toxicology expert to directly challenge the prosecution's expert. The Michigan Court of Appeals nonetheless affirmed Bergman's convictions.

But the Court cannot grant habeas relief to Bergman. Such relief is available only where a state court decision on the merits is contrary to, or involves an unreasonable application of, "clearly established federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(2), and the Supreme Court has not held that a criminal defendant – other than a defendant whose sanity is at issue and who seeks the appointment of a psychiatric expert – is entitled to the appointment of an expert witness. Thus, the decision of the Michigan Court of

Appeals – though clearly wrong in this Court's view – was neither contrary to, nor an unreasonable application of, clearly established federal law. Habeas relief is therefore unavailable to Bergman on this claim.

Bergman brings other claims as well, but for the reasons explained below, she is not entitled to federal habeas relief on those claims either. Accordingly, the Court will **DENY** her petition for a writ of habeas corpus (ECF No. 1). But the Court will **GRANT** Bergman a limited certificate of appealability and **GRANT** her permission to appeal *in forma pauperis*.

## I

Bergman was convicted by a jury in the St. Clair County Circuit Court of two counts each of second-degree murder, Mich. Comp. Laws § 750.317; operating a vehicle under the influence of intoxicating liquor or a controlled substance causing death, Mich. Comp. Laws § 257. 625(4); and operating a vehicle with a suspended license causing death, Mich. Comp. Laws § 257.904(4). Bergman was sentenced as a second-offense habitual offender, Mich. Comp. Laws § 769.10, to concurrent prison terms of twenty-five to fifty years for each of the second-degree murder convictions, and five to twenty-two and one-half years for the remaining convictions.

The Michigan Court of Appeals summarized Bergman's case as follows:

Defendant's convictions arise from a two-vehicle collision in Kimball Township in St. Clair County shortly before 2:00 a.m. on July 20, 2013. A witness to the scene of the accident testified that there was heavy rain and fog. Defendant was driving a Ford F–350 pickup truck in the eastbound lane of Lapeer Road when she crossed the centerline, veered into the westbound lane, and collided head-on with a GMC Sonoma S–10 pickup truck. Lieutenant Terpenning, an expert in accident reconstruction, testified that there was "no question" in his mind that defendant's vehicle crossed the centerline into oncoming traffic. He did not observe anything to indicate that the S–10 pickup truck did anything improper or did "anything other than driv[e] down its intended lane of travel." The driver of the GMC truck, Russell Ward, and his passenger, Koby Raymo, both died from blunt traumatic injuries.

Defendant's blood alcohol concentration (BAC) was below the legal limit, but she also tested positive for carisoprodol (trade name Soma, which is a muscle relaxant and not an opiate), meprobamate (the active metabolite of carisoprodol), oxycodone, and amphetamine. Although the levels of these drugs in her system were within the therapeutic range, Dr. Michele Glinn, an expert in forensic toxicology and the effect of drugs and alcohol on the human body, testified that the drugs, other than amphetamine, were central nervous system depressants and combining them could magnify the effects and keep the drugs in the system longer. Glinn testified that, in particular, alcohol and Soma are a "bad combination." In Glinn's opinion, the drugs in defendant's system affected her ability to operate a motor vehicle.

At trial, over defendant's objection, the prosecution presented evidence of seven prior incidents in which defendant drove erratically, was passed out in her vehicle, or struck another vehicle while impaired or under the influence of prescription substances, such as carisoprodol or Soma, or was in possession of pills, such as Vicodin or

> Soma. This evidence was offered for its relevance to the malice element of second-degree murder because it was probative of defendant's knowledge of how her substance abuse impaired her driving.

*People v. Bergman*, 879 N.W.2d 278, 281-283 (Mich. App. 2015) (internal footnotes omitted).

Bergman filed a direct appeal in the Michigan Court of Appeals challenging the trial court's exclusion of evidence of drugs and alcohol in the bloodstream of the driver of the other car, its denial of Bergman's request for the appointment of a toxicologist and a private investigator at public expense, the charging of and conviction on six criminal counts for only two homicide offenses, the improper admission of prior "bad acts" evidence, and judicial factfinding at sentencing. (*See* Ct. App. Rec., ECF No. 6-16, PageID.964.) That court affirmed her convictions and sentence. *See Bergman*, 879 N.W.2d at 281. The relevant portions of the Court of Appeals' decision are discussed in more detail below.

Bergman then filed an application for leave to appeal in the Michigan Supreme Court. That court denied the application in a standard form order, *see People v. Bergman*, 877 N.W.2d 893 (Mich. 2016), and denied her motion for reconsideration. *See People v. Bergman*, 884 N.W.2d 289 (Mich. 2016).

Bergman filed her *pro se* petition for a writ of habeas corpus in this Court on October 24, 2017, raising the following four issues:

I.      THERE WAS INSUFFICIENT EVIDENCE IN PETITIONER'S CASE TO PROVE THE ESSENTIAL ELEMENTS OF SECOND DEGREE MURDER WHERE PETITIONER'S CONDUCT DID NOT RISE TO THE LEVEL OF REQUIRED MALICE (DEPRAVED INDIFFERENCE FOR HUMAN LIFE) ACCORDING TO THE STANDARD SET FORTH IN *JACKSON V. VIRGINIA*, 443 U.S. 307; 99 S. CT. 2781; 61 L.ED.2D 560 (1979).

II.     PETITIONER'S SIXTH [AMENDMENT] CONSTITUTIONAL RIGHT TO PRESENT HER DEFENSE WAS VIOLATED WHEN THE TRIAL COURT EXCLUDED EVIDENCE OF INTOXICANTS AND CONTROLLED SUBSTANCES IN THE DRIVER OF THE OTHER CAR'S BLOOD STREAM VIOLATING, IN PART, *BRADY V. MARYLAND*, 373 U.S. 83; 83 S. CT. 1194; 10 L.ED.2D 215 (1963).

III.    PETITIONER'S DUE PROCESS AND SIXTH . . . AMENDMENT RIGHT[S] TO PRESENT HER DEFENSE WERE VIOLATED WHEN THE TRIAL COURT DENIED TO APPOINT A TOXICOLOGIST TO COMBAT THE STATE'S EXPERT.

IV.     PETITIONER'S CONSTITUTIONAL RIGHTS TO BE PRESUMED INNOCENT UNTIL PROVEN GUILTY (U.S.C. ART. 11) AND TO RECEIVE A FAIR TRIAL WITH IMPARTIAL AND UNBIASED JURORS (U.S.C. FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS) WERE VIOLATED WHERE THE TRIAL COURT ALLOWED INADMISSIBLE AND HIGHLY PREJUDICIAL EVIDENCE OF PRIOR BAD ACTS TO CONSUME AND TAINT THE TRIAL.

(Pet., ECF No. 1, PageID.5.)

On December 8, 2020, the Court appointed the Federal Defender's Office to represent Bergman because the Court believed that she would benefit from the

assistance of counsel. (*See* Order, ECF No. 11.) Counsel then filed a supplemental brief on Bergman's behalf addressing two issues: the denial of funding for an independent toxicologist and the exclusion of the victim's toxicology report. (*See* Supp. Br., ECF No. 15.)

## II

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq*., sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state court convictions. AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was

unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

## III

### A

The Court begins with Bergman's claim that the prosecution failed to present sufficient evidence to support her second-degree murder conviction. Bergman did not present this claim to the Michigan Court of Appeals on direct review, and that Court did not decide the claim on the merits. However, Respondent "is not arguing" that the claim is not exhausted nor that the claimed is procedurally defaulted. (Resp. to Petition, ECF No. 5, PageID.116.) The Court will therefore proceed to review the claim *de novo*.[1]

When reviewing this claim, the Court applies the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 321 (1979). Under *Jackson*, this Court must ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable

---

[1] Both Bergman and Respondent appear to have assumed that the Michigan Court of Appeals reviewed this claim and therefore AEDPA deference applies to the claim. However, this Court must undertake its own review and make its own determination as to the proper standard of review to be applied to Bergman's claims. When the Court undertook that review, it discovered that while the Court of Appeals addressed certain evidentiary issues, it did not review the sufficiency of the evidence. Since that court did not decide Bergman's sufficiency of the evidence claim on the merits, this Court reviews the claim *de novo*.

doubt." *Jackson*, 443 U.S. at 319. And it must do so "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* The elements of second-degree murder under Michigan law are "(1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death." *Bergman*, 879 N.W.2d at 288 (quoting *People v. Smith*, 731 N.W.2d 411, 414-15 (Mich. 2007)). In the petition, Bergman insists that the prosecution failed to present sufficient evidence of the third element: that she acted with malice. "Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm. The prosecution is not required to prove that the defendant actually intended to harm or kill. Instead, the prosecution must prove the intent to do an act that is in obvious disregard of life-endangering consequences." *Id.* (internal citation omitted).

Here, when the evidence is viewed in the light most favorable to the prosecution, a rational jury could have concluded that there was sufficient evidence of malice. At trial, the prosecution introduced evidence that Bergman had "seven prior incidents in which [she] drove erratically, was passed out in her vehicle, or struck another vehicle while impaired or under the influence of prescription substances, such as carisoprodol or Soma, or was in possession of pills, such as

Vicodin or Soma." *Id.* at 282.  Given Bergman's prior history of dangerous driving while impaired – including, most importantly, an incident where she struck another vehicle – the jury, after drawing all reasonable inferences in favor of the prosecution, could reasonably have concluded that she had "knowledge of *her* own propensity to create a notably severe hazard when driving while intoxicated." *Id.* at 288 (emphasis in original).

This is the same conclusion that the Michigan Court of Appeals reached under similar facts in *People v. Werner*, 659 N.W.2d 688 (Mich. App. 2002).  In *Werner*, the Michigan Court of Appeals explained that there was sufficient evidence of malice where a driver drove under the influence of alcohol while he was aware of his own prior history of dangerous driving while impaired:

> This is not a case where a defendant merely undertook the risk of driving after drinking. Defendant knew, from a recent prior incident, that his drinking did more than simply impair his judgment and reflexes. He knew that he might actually become so overwhelmed by the effects of alcohol that he would completely lose track of what he was doing with his vehicle. If defendant knew that drinking before driving could cause him to crash on boulders in front of a house, without any knowledge of where he was or what he was doing, he knew that another drunken driving episode could cause him to make another major mistake, one that would have tragic consequences.

*Werner*, 659 N.W.2d at 693.  Likewise here, the jury could reasonably have concluded that Bergman knew from her prior incidents that driving while impaired could have "tragic consequences."

For all of these reasons, Bergman has failed to persuade the Court that the prosecution failed to introduce sufficient evidence to establish the malice element of of her second-degree murder conviction. Bergman is therefore not entitled to federal habeas relief on this claim.

**B**

The Court next addresses Bergman's claim that the state trial court violated her constitutional rights when it allowed the prosecution to introduce the evidence of her past impaired driving incidents described above (*i.e.*, the evidence that supported malice) under Michigan Rule of Evidence 404(b). Bergman insists that this evidence was unduly prejudicial, that it undermined her presumption of innocence, and that the conduct described in the prior incidents was "completely different" from her behavior the night of the offense. (Pet., ECF No. 1, PageID.46-50.)

Bergman raised this claim on direct review and the Michigan Court of Appeals rejected it:

> Defendant next argues that the trial court erred by admitting evidence of her prior acts under MRE 404(b)(1). We disagree.
>
> We review the trial court's decision to admit evidence for an abuse of discretion. *People v. Gursky,* 486 Mich. 596, 606, 786 N.W.2d 579 (2010). MRE 404(b)(1) prohibits "[e]vidence of other crimes, wrongs, or acts" to prove a defendant's character or propensity to commit the charged crime, but permits such evidence for other purposes, "such

as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material...." Evidence of other crimes or bad acts is admissible when it is offered for a proper purpose, MRE 404(b)(1); it is relevant under MRE 402; and its probative value is not substantially outweighed by unfair prejudice, MRE 403. *People v. VanderVliet,* 444 Mich. 52, 74–75, 508 N.W.2d 114 (1993), amended 445 Mich. 1205, 520 N.W.2d 338 (1994).

In *Werner,* 254 Mich.App. at 533–534, 659 N.W.2d 688, this Court held that evidence that the defendant had previously experienced an alcohol-induced blackout while driving, during which he "crash[ed] on boulders in front of a house, without any knowledge of where he was or what he was doing," was admissible under MRE 404(b)(1) in a case in which the defendant was charged with second-degree murder; OUIL causing death, OUIL causing serious impairment of a body function; MCL 257.625(5); and driving with a suspended license, second offense, MCL 257.904(1). This Court held that the evidence was properly admitted to show knowledge and absence of mistake, and was probative of the malice element for second-degree murder because it showed "that defendant knew that heavy drinking could lead to a blackout, and that a blackout could lead to defendant's driving without any understanding of what he was doing." *Id.* at 539–540, 659 N.W.2d 688. The evidence also was relevant because the defendant's previous blackout while driving "made it more probable than not that he was aware this could happen to him." *Id.* at 540, 659 N.W.2d 688. This Court further concluded that the probative value of the evidence outweighed any prejudicial effect because the prior incident involving a one-vehicle accident with no injuries to anyone was a minor incident in comparison to the charged offense, in which the defendant drove the wrong way on a freeway and caused the death of a young woman and seriously

injured a young man. In addition, the trial court gave an appropriate cautionary instruction. *Id.*

We conclude that *Werner* is directly on point. The prior acts evidence here involved incidents in which defendant either drove unsafely, was passed out in her vehicle, or was involved in an accident while impaired or under the influence of prescription substances, or was in possession of pills, such as Vicodin and Soma. This evidence was properly admitted to show defendant's knowledge and absence of mistake, and was relevant to the malice element for second-degree murder because it was probative of defendant's knowledge of her inability to drive safely after consuming prescription substances. And, because the prior incidents were minor in comparison to the charged offenses involving a head-on collision that caused the deaths of two individuals, the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice under MRE 403. Lastly, the trial court gave an appropriate cautionary instruction to reduce any potential for prejudice.

*Bergman*, 879 N.W.2d at 291-92.

As an initial matter, to the extent that Bergman argues that the admission of this "other acts" evidence violated Michigan law, that claim is not cognizable on federal habeas review. It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Errors in the application of state law, including rulings regarding the admissibility of evidence under state rules of evidence, are generally not cognizable in a federal habeas proceeding. *See Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000).

Bergman has also failed to show that the admission of the "other acts" evidence violated her constitutional rights. "[S]tate-court evidentiary rulings [do not] rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Wilson v. Sheldon*, 874 F.3d 470, 475–76 (6th Cir. 2017) (quoting *Seymour*, 224 F.3d at 552). Here, Bergman has neither established that the admission of this evidence violated her due process rights nor that it offended some deeply rooted "principle of justice." She has not identified any clearly established Supreme Court precedent to support this claim for relief. And the Sixth Circuit recently confirmed that "no clearly established Supreme Court precedent . . . holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Stewart v. Winn*, 967 F.3d 534, 538 (6th Cir.), *cert. den. sub nom. Stewart v. Stoddard*, 141 S. Ct. 929 (2020) (quoting *Bugh v. Mitchell*, 329 F.3d 496, 512–13 (6th Cir. 2003)). Nor has Bergman cited any Supreme Court (or other) precedent holding that the admission of other acts evidence violates the presumption of innocence.

For all of these reasons, Bergman is not entitled to federal habeas relief on this claim.

# C

The Court now turns to Bergman's claim that the state trial court violated her

constitutional right to present a defense when it excluded the toxicology report for

deceased driver Ward. That report showed that Ward had intoxicants and controlled

substances in his blood at the time of the crash. This issue arose at trial as follows:

> In another pretrial motion, the prosecutor sought to
> exclude evidence of the deceased victims' toxicology
> reports. The prosecutor noted that Ward's toxicology
> report indicated that he had a BAC of 0.054 grams per 100
> milliliters, and 6.2 nanograms per milliliter of delta–9
> tetrahydrocannabino (THC) and 17 nanograms per
> milliliter of delta–9 carboxy THC in his bloodstream. His
> passenger, Koby Raymo, had a BAC of 0.110 grams per
> 100 milliliters, and also 7.5 nanograms per milliliter of
> delta–9 THC and 10 nanograms per milliliter of delta–9
> carboxy THC in his bloodstream. The prosecutor argued
> that this evidence should be excluded because it was not
> relevant and it was unduly prejudicial. Raymo's
> toxicology results were irrelevant because he was a
> passenger and could not have contributed to the accident.
> Ward's toxicology results were irrelevant because the
> evidence clearly established that defendant crossed the
> centerline and struck Ward's vehicle head-on, with no
> negligence by Ward. Finally, the prosecutor argued that
> any probative value of the evidence was outweighed by
> the danger of unfair prejudice, misleading the jury, and
> confusion of the issues.
>
> Defendant argued in response that Ward's toxicity levels
> were relevant to the issues of fault and causation. At the
> hearing on the motion, defense counsel argued that the
> other driver had "therapeutic levels" of the opiate pain
> reliever Tramadol and benzodiazepine. The trial court
> excluded the evidence on the basis that there was no
> legitimate question of fact regarding the proximate cause

of the accident. At trial, defense counsel conducted voir dire examination of Dr. Mary Pietrangelo, the deputy medical examiner who performed autopsies on Ward and Raymo, in order to create a record of excluded testimony. Pietrangelo testified that Ward's ethanol level was below the legal limit, his level of Tramadol (a pain medication) was within a therapeutic dosage, and he had been exposed to marijuana or a similar substance, but she could not determine the level of exposure. Pietrangelo ruled out those substances as contributing factors to his manner of death. Defense counsel then renewed his motion to admit Ward's toxicology results. He argued that they were relevant to show that Ward was unable to remain alert and react to sudden emergencies. The trial court stated that if Ward's conduct was a factor in the proximate cause of his death, "that does not necessarily negate or nullify the conduct of Ms. Bergman if the facts support what it is that she's being accused of." The trial court concluded that in order for such evidence to be potentially admissible, there would have to be something "fairly substantial in terms of the detail of this accident that would suggest that Mr. Ward was somehow a cause of the accident." While the trial court did not rule out admitting the evidence of Ward's toxicology after development of the testimony, it was never admitted.

*Bergman*, 879 N.W.2d at 285.

On direct review, Bergman argued that the trial court erred when it excluded the toxicology report for Ward, and the Michigan Court of Appeals rejected her argument. *See id.* at 285-88. The appellate court held that the trial court properly excluded the evidence under Michigan Rule of Evidence 402. It explained that "the excluded evidence [was] not probative of an intervening or superseding cause that could break the causal link between [Bergman's] conduct and the victims' deaths"

16

because "[t]here was no evidence that Ward was not properly driving within his marked lane, or that Ward's vehicle would not have safely passed defendant if defendant had not crossed the centerline in front of Ward, presenting a serious and unexpected hazard. Thus, there was no evidence that Ward did anything that contributed to the accident in a way that would establish that he was negligent or grossly negligent and by his conduct was an intervening cause of the accident." *Id.* The Court of Appeals further concluded that because "the offense of second-degree murder is committed when the defendant has knowledge of *her* own propensity to create a notably severe hazard when driving while intoxicated, [] the victim's state of intoxication [was] irrelevant to the defendant's knowledge of her own susceptibility to hazardous driving." *Id.* at 288 (emphasis in original).

Bergman is not entitled to habeas relief on this claim for two reasons. First, as discussed above, the admission or exclusion of evidence under state rules of evidence is a state-law issue that is generally not cognizable on federal habeas review short of a denial of fundamental fairness or due process, *see Seymour*, 224 F.3d at 552 (6th Cir. 2000); *Wilson*, 874 F.3d at 475–76 (6th Cir. 2017), and Bergman has not shown that she meets that standard here. It does not strike this Court as fundamentally unfair that the trial court excluded evidence of Ward's toxicology report when there was no evidence that Ward's driving in any way contributed to the crash. Second, Bergman has not cited any holding of the Supreme Court that

compelled the trial court to admit Ward's toxicology report. For these reasons, Bergman is not entitled to federal habeas relief on her claim related to Ward's toxicology report.

## D

Finally, Bergman claims that the state trial court violated her right to due process and denied her a fundamentally fair trial when it denied her pretrial motion for the appointment of a defense toxicology expert at public expense. Bergman sought the appointment of such an expert to assist her attorney in understanding the prosecution's toxicology evidence, in assessing whether proper toxicology testing protocols were followed, and in developing cross-examination questions for the prosecution's experts. (*See* 10/17/13 Mot. Hrg. Tr., ECF No. 6-4, PageID.337-345.) The trial court declined to appoint a toxicology expert at public expense on the ground that Bergman had not shown a sufficient nexus between her need for an expert and the prosecution's case and because that court was "not convinced that [the expert was] absolutely necessary." (*Id.*, PageID.345-46.)

On direct appeal, Bergman argued that the trial court erred when it declined to appoint a toxicology expert for her at public expense, and the Michigan Court of Appeals rejected that argument:

> Defendant relies on *Ake v. Oklahoma,* 470 U.S. 68, 77 (1985) (quotation marks and citation omitted), in which the United States Supreme Court held that "[m]eaningful access to justice" and fundamental fairness require that

indigent defendants be afforded, at state expense, the "basic tools of an adequate defense or appeal[.]" This Court recognized *Ake* in *People v. Leonard,* 224 Mich. App. 569, 580–581, 569 N.W.2d 663 (1997), and still concluded that "a defendant must show a nexus between the facts of the case and the need for an expert." *Id.* at 582, 569 N.W.2d 663.

We conclude that *Ake* does not require appointment of a defense expert without a demonstration of a nexus between the need for an expert and the facts of the case. Here, defendant failed to establish the requisite nexus. She asserted that toxicology evidence was a critical part of the prosecution's case, but she did not explain why she could not safely proceed to trial without her own expert. She did not establish why the objective results of blood analysis might be unreliable. She made no offer of proof that an expert could dispute the prosecution experts' opinions regarding the side effects of prescription medications and their contribution to impaired driving. Defendant failed to establish that expert testimony would likely benefit her case. A mere possibility that the expert would have assisted the defendant's case is not sufficient.

*Bergman*, 879 N.W.2d at 289 (internal citations omitted).

The Court respectfully disagrees with the Michigan Court of Appeals' analysis and conclusion. It seems clear to this Court that as a matter of fundamental fairness the state trial court should have appointed a defense toxicologist at public expense. Because Bergman did not have the assistance of such an expert, she could not effectively respond to the prosecution's expert toxicology testimony. And that testimony was an essential pillar of the prosecution's case. Indeed, one of the prosecution's star witnesses was Dr. Michele Glinn, "an expert in forensic

toxicology and the effect of drugs and alcohol on the human body." *Id.* at 282. Dr. Glinn provided detailed testimony about the various drugs that Bergman had in her system at the time of the crash, and Dr. Glinn explained to the jury how each of those drugs could have impaired Bergman's ability to drive and caused various side effects such as drowsiness, dizziness, confusion, and decreased reaction time. (*See* 1/16/14 Trial Tr., ECF No. 6-12, PageID.737-740.) Dr. Glinn further testified that even if the drugs did not exceed a "therapeutic level," they could still have caused serious side effects when taken together. (*Id.*, PageID.740.) In particular, Dr. Glinn testified that two of the drugs Bergman had taken – alcohol and Soma – "together [were] a bad combination." (*Id.*, PageID.748.) Finally, Dr. Glinn told the jury that it was her opinion that the combination of drugs that Bergman had taken "affect[ed] her ability" to drive safely and rendered Bergman unable to "operate a motor vehicle properly." (*Id.*, PageID.742.) Bergman's counsel cross-examined Dr. Glinn, but he was not able to meaningfully undermine her testimony. (*See id.*, PageID.743-747.)

Dr. Glinn's testimony then became a focal point of the final arguments to the jury. The prosecution highlighted that testimony several times during its closing. For example, the prosecution reminded the jury of Dr. Glinn's testimony about the "effects on the body" of the drugs Bergman had taken. (1/17/14 Trial Tr., ECF No. 6-13, PageID.798; *see also id.*, PageID.813.) It then emphasized Dr. Glinn's conclusion that Bergman could not safely operate a vehicle:

And finally you heard from Doctor Glinn, and she in her expert opinion – and the reason why I, I admitted her resume is because I want you guys to look at her credentials. I want you to look and see how much experience this person has in terms of this kind of thing and the effects of these kinds of drugs on her body, and I want you to be able to listen –or re-evaluate her testimony in terms of the fact that her conclusion was that this woman was under the influence and, and those kinds of similar drug categories that she was talking about, mixing with alcohol, can clearly affect the Defendant's ability to operate her vehicle in, in Doctor Glinn's opinion.

[….]

This is a woman who knows, well, I do get a little drowsy when I take this other stuff, maybe. I don't know. I'm talking in her voice, but if, if she does that, what has she got to do to counteract some of that? She's got to take a different drug. And none of them are prescribed. And Doctor Glinn tells you that you can't you shouldn't mix these things, and you shouldn't take them without a doctor's orders, and you shouldn't be operating a motor vehicle. And that, that all these pills have this kind of warning on it.

(*Id.*, PageID.811, 814-815.) In response, defense counsel mentioned Dr. Glinn's testimony numerous times in his closing argument. (*See id.*, PageID.829-833, 842.) Finally, the prosecution then returned to her testimony several times in its rebuttal. (*See id.*, PageID.843-844, 846.)

Without the assistance of a toxicology expert, Bergman's defense counsel was substantially hampered in his ability to (1) critically analyze Dr. Glinn's opinions and method of analyzing the available data and (2) formulate effective cross-

examination questions aimed at casting doubt on the reliability of her opinions. Just as importantly, because the trial court did not appoint a defense toxicology expert, Bergman was left without the ability to seek her own expert testimony responding to Dr. Glinn's opinions. Simply put, Bergman was deprived of a meaningful opportunity to develop the most effective challenge to a pillar of the prosecution's case.

Moreover, the Michigan Court of Appeals' conclusion that Bergman's lawyer failed to adequately explain his need for a toxicology expert was unreasonable. Bergman's trial counsel persuasively explained to the trial court that he needed assistance from an expert so he could understand what the prosecution's toxicology reports meant and so he could properly prepare for a cross-examination of the prosecution's several experts:

> I'm not a toxicologist, I don't know chemistry [….] So I need to talk to a professional who can advise me as to what the results mean and how it impacts my client's defense [….] I can't interpret them.
>
> [….]
>
> [I need someone to] go over the police report, the lab results, and be able to speak to me about what these things mean in terms of the Defense.
>
> [….]
>
> I am not competent as a chemist or toxicologist to know what do these numbers mean. They may not mean anything. Or maybe they mean that this person is highly

> impaired by these things because she's got such and such milligrams of this and this. I don't know […]
>
> My motion is I need someone who can first of all, look at the numbers in the, in the context of the police report in terms of their description of the events and tell me do these – what do these numbers mean. Does this indicate a toxic level for someone or is this something that does not affect driving.

(10/7/13 Mot. Hrg. Tr., ECF No. 6-4, PageID.337-339, 343.[2])  This explanation of counsel's need for an expert was more than sufficient.   Indeed, the Michigan Supreme Court has explained that it would be unfair to require a criminal defendant to offer a more detailed explanation of his need for the appointment of an expert under these circumstances:

> Until an expert is consulted, a defendant might often be unaware of how, precisely, the expert would aid the defense. If, in such cases, the defendant were required to prove in detail with a high degree of certainty that an expert would benefit the defense, the defendant would essentially be tasked with the impossible: *to get an expert, the defendant would need to already know what the expert would say.*

*People v. Kennedy*, 917 N.W.2d 355, 366 (Mich. 2018) (emphasis added).[3]

---

[2] Bergman's counsel also told the trial court that he needed expert assistance because he "ha[d] no idea" whether testing protocols had been followed properly. (10/7/13 Mot. Hrg. Tr., ECF No. 6-4, PageID.344.)

[3] The Court acknowledges that Bergman has not submitted an affidavit from an expert that explains what testimony that expert could have provided at Bergman's trial and/or how the expert could have helped Bergman's counsel develop cross-examination questions for Dr. Glinn.   But Bergman is indigent, and she has never been in a position to consult with an expert.

Despite this Court's conclusion that depriving Bergman of a toxicology expert rendered her trial fundamentally unfair and that the Michigan Court of Appeals should have vacated her convictions as a result, this Court may not grant habeas relief to Bergman. That is because the Michigan Court of Appeals' decision was not contrary to, or an unreasonable application of, "clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(2).

The Supreme Court has not held that a criminal defendant in Bergman's position is entitled to the appointment of the type of expert she sought. In *Ake*, the Supreme Court held that "the Constitution requires that an indigent defendant have access to the psychiatric examination and assistance necessary to prepare an effective defense based on his mental condition, when his sanity at the time of the offense is seriously in question." *Ake*, 470 U.S. at 70. But the Supreme Court "has not yet extended *Ake* to non-psychiatric experts." *Conklin v. Schofield*, 366 F.3d 1191, 1206 (11th Cir. 2004). *See also Hawkins v. Mullin*, 291 F.3d 658, 671 n. 6 (10th Cir. 2002) ("Although this court has extended *Ake* to the State's provision of investigators and other experts as well, the Supreme Court has not specifically done so") (citations omitted); *McGowan v. Winn*, No. 17-2000, 2018 WL 1414902, at *2 (6th Cir. Mar. 21, 2018) ("Because the Supreme Court has not extended *Ake* to non-psychiatric experts, the rejection of [petitioner's] claim is not contrary to or an unreasonable application of clearly established federal law as determined by the

Supreme Court") (internal citation omitted).[4]  For that reason, AEDPA precludes this Court from granting Bergman habeas relief based upon the trial court's refusal to appoint her a expert toxicology witness at public expense.

Bergman argues that a post-*Ake* case, *Medina v. California*, 505 U.S. 437, (1992), provides the clearly-established law in support of her argument. *Medina* observed that "[t]he holding in *Ake* can be understood as an expansion of earlier due process cases holding that an indigent criminal defendant is entitled to the minimum assistance necessary to assure him 'a fair opportunity to present his defense' and 'to participate meaningfully in [the] judicial proceeding.'" *Id*. at 444–45 (citing *Ake*, 470 U.S. at 76).

However, the statement from *Medina* cited by Bergman does not constitute clearly established federal law.  "[C]learly established Federal law for purposes of § 2254(d)(1) includes only" Supreme Court "holdings." *White v. Woodall*, 572 U.S. 415, 419 (2014) (internal quotation marks omitted). And the Supreme Court in *Medina* did not issue any holdings concerning the appointment of expert witnesses.

The question in *Medina* was "whether the Due Process Clause permits a State to require a defendant who alleges incompetence to stand trial to bear the burden of

_____

[4]  District courts within the Sixth Circuit have reached this same conclusion. *See*, *e.g.*, *McGowan v. MacLaren*, 2017 WL 3172840, at *12 (W.D. Mich. July 26, 2017); *Phlegm v. Berghuis*, 2014 WL 7433415, at *7 (E.D. Mich. Dec. 31, 2014) (O'Meara, J.) (citing *Conklin*, 366 F.3d at 1206); *Raar v. Rivard*, 2014 WL 3709235, at *7 (E.D. Mich. July 28, 2014) (Goldsmith, J.).

proving so by a preponderance of the evidence." *Medina*, 505 U.S. at 439. While the court analyzed in detail the allocation of that burden of proof, *see id*. at 446-52, it did not make any rulings concerning whether the defendant was entitled to the appointment of an expert at public expense. In fact, *Medina*'s only two citations to *Ake* are in its discussion of the applicability of the procedural due process balancing test of *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Medina*, 505 U.S. at 444-45. Thus, *Medina* does not clearly establish that a criminal defendant has the right to the appointment of a non-psychiatric expert witness.

Finally, in her supplemental brief, Bergman also relies upon the Supreme Court's decision in *Britt v. North Carolina*, 404 U.S. 226 (1971). In *Britt*, the Supreme Court observed that "the State must, as a matter of equal protection, provide indigent prisoners with the basic tools of an adequate defense or appeal, when those tools are available for a price to other prisoners." *Britt*, 404 U.S. at 227. But the question in *Britt* was whether "the state court properly determined that the transcript requested in [that] case was not needed for an effective defense." *Id.* Thus, *Britt* did not *hold* that a criminal defendant is entitled to the appointment of a non-psychiatric expert.

For all of the reasons stated above, Bergman is not entitled to federal habeas relief on her claim that the trial court violated her right to due process when it refused to appoint a toxicology expert witness for her.

# IV

In order to appeal the Court's decision, Bergman must obtain a certificate of appealability. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *See Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002).

The Court will **GRANT** Bergman a certificate of appealability limited to her claim that the state trial court violated her rights to due process and to a fair trial when it denied her pretrial motion for the appointment of a defense toxicology expert at public expense. The Sixth Circuit has not yet determined in a published decision whether *Ake* clearly establishes that a criminal defendant in Bergman's position has a constitutional right to the appointment of a non-psychiatric expert at the public's expense. That issue deserves further consideration on appeal. Bergman should be able to present to the Sixth Circuit all of her arguments seeking relief based upon the denial of her motion for the appointment of a toxicology expert at public expense.

However, the Court will **DENY** a certificate of appealability with respect to Bergman's other claims.  Jurists of reason would not debate the Court's conclusion that Bergman has failed to demonstrate an entitlement to habeas relief on any of those claims.  Nor do those claims warrant further consideration on appeal.

Finally, the Court **GRANTS** Bergman leave to proceed *in forma pauperis* on appeal.  The standard for granting such leave is not as strict as the standard for certificates of appealability. *See Foster v. Ludwick*, 208 F.Supp.2d 750, 764 (E.D. Mich. 2002). While a certificate of appealability requires a substantial showing of the denial of a constitutional right, a court may grant *in forma pauperis* status if it finds that an appeal is being taken in good faith. *See id*. at 764-65; 28 U.S.C. § 1915(a)(3).  In this case, an appeal could be taken in good faith. Accordingly, the Court **GRANTS** Bergman permission to proceed in forma pauperis on appeal.

## V

For the reasons stated above, the Court (1) **DENIES WITH PREJUDICE** Bergman's petition for a writ of habeas corpus (ECF No. 1), (2) **GRANTS** Bergman a limited certificate of appealability as described above, and (3) **GRANTS** Bergman permission to appeal *in forma pauperis*.

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  June 4, 2021

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 4, 2021, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9761